FILED

2006 Feb-03  PM 05:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LISA COLLINS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:04-cv-3142-UWC** |
| **DURABLE MEDICAL EQUIPMENT** | ) | |
| **RENTAL AND SALES, INC.,** | ) | |
| | **)** | |
| Defendant. | ) | |

### MEMORANDUM OPINION GRANTING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case arising under 42 U.S.C. § 1981, Plaintiff Lisa Collins alleges

that she was terminated because of her race and in retaliation for her opposition to

an unlawful employment practice.  Defendant Durable Medical Equipment Rental

and Sales, Inc.("DME") has moved for summary judgment.

Based on the undisputed facts, the motion is due to be granted.

I

DME is a medical supply company which rents and sells durable medical

supplies such as wheelchairs and chairlifts.  Plaintiff was employed by DME in

2003.  She was primarily in charge of Medicare billing, but also had the responsibility of supervising the office as office manager.  DME is owned and operated by Pete Allen.

Beginning in 2002, DME began to suffer from financial difficulties.  It terminated nine of its fourteen employees between January 1, 2003, and June 15, 2004.   Of the nine employees terminated,  seven were white and two were black.

One of the terminated employees was Shelly Smith.   Smith's main responsibility was to bill Blue Cross/Blue Shield.   On July 6, 2004, Tammy Moore, a white woman, was hired to replace Smith.

On June 15, 2004, black employees Iris Johnson and Qontae Bolton were terminated.   Both Johnson and Bolton worked under Collins in the office.  After Johnson and Bolton were terminated, their job responsibilities were assumed by other employees at DME.

Believing that their terminations were racially motivated,  Johnson and Bolton hired Attorney Adam Porter to represent them on their claims against DME.  Attorney Porter then wrote to Allen,  informing him of his intention to initiate a lawsuit unless he was able to settle the matter with DME.

After receiving the letter, Allen met with Plaintiff and another DME employee,  Rhonda Montgomery.   Montgomery was in the office in order to

witness what was said during the conversation.

Allen asked Plaintiff to write two reports: one which would document an incident in which Johnson had been rude on the telephone, and a second describing an incident in which Bolton came back to workplace  after her termination. With respect to Bolton, Allen requested Plaintiff to "write up" what happened when Bolton came to the office the preceding Thursday: "what she came in with, where she got it from, what she left with, and why she was here." (Collins Depo, p. 51.)

After consultation with her husband, Plaintiff failed and refused to make the reports.  She thought that it would have been dishonest to write the reports since they would be written  after the fact.  (*Id.,* 51-57.)

Allen then fired Plaintiff for insubordination.

Plaintiff was not replaced; instead Moore assumed her duties.

After her discharge, Plaintiff filed a claim for unemployment compensation benefits with the Alabama State Department of Industrial Relations ("the Department").  Following a hearing at which both sides presented evidence, the Appeals Referee of the Department  found that

> The claimant last worked for this employer on July 15, 2004. ....
> She was discharged from this employment for failing to comply
> with a reasonable request made by the employer.

On her last day of work, the claimant was asked to write a brief
history of actions that had transpired with two former employees
who were suing the employer. The request was made by the presi-
dent of the company with his executive assistant being present. The
claimant subsequently informed the executive assistant that she felt
that she could not comply with the request because she felt the
employer was asking her to fabricate some kind of fraudulent docu-
ment. The executive explained to the claimant that she was not being
asked to do anything illegal or unethical and that she was only being
asked to write a true and correct history of events that has occurred
as she preceded [sic] them. The claimant continued to refuse to write
the history because she feared becoming a party to the suit by the
former employees. As a result of her refusal, she was terminated from
employment.

(Def. Ex. F.) Based on these findings, the Department concluded that Plaintiff was

disqualified from benefits because of "misconduct connected with work. (*Id.*)

II

On these facts, Defendant is entitled to judgment as a matter of law.

A.

On the claim of a racially discriminatory discharge, assuming *arguendo* that

she had established a *prima facie* case,[1]  Plaintiff has not rebutted the legitimate,

---

[1]Defendant argues that Plaintiff has not carried her *prima facie* burden because she has
not, and cannot, establish that she was replaced by a white employee. *See, Edwards v. Wallace
Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995);  *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d
1318, 1331 (11th Cir. 1998). But the Court finds it unnecessary to address the issue, for Plaintiff
has clearly failed to show pretext.

non-discriminatory reason articulated by Defendant. Defendant maintains that it

discharged Plaintiff because of insubordination.  Plaintiff has not shown the

articulated reason to be a pretext or otherwise unworthy of credence.[2]

B.

Plaintiff is collaterally estopped from re-litigating her Section 1981 claim in

this forum.

It is settled law in the Circuit that:

> When a state agency, acting in a judicial capacity, resolves disputed
> issues of fact before it that the parties have had an adequate opportunity
> to litigate, federal courts must give the agency's fact finding the same
> preclusive effect to which it would be entitled in the State's court. *See
> University of Texas v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220; 92 L.
> Ed.2d 685 (1986).

*Travers v. Jones,* 323 F.3d 1294 (11th Cir.2003).[3]  In Alabama, the doctrine of

collateral estoppel applies to unemployment-compensation decisions of the

---

[2]There is no evidence that a white employee engaged in similar conduct and was not discharged.  While there may be some legitimacy in Plaintiff's position that she could not be required to report on an incident she had not witnessed; there is absolutely no legal justification for Plaintiff's refusal to report the details of her observations of Bolton when she returned to the office after being terminated.  Plaintiff was both the Office Manager, and the only eyewitness to what had or had not transpired.  Her failure to comply with this aspect of Allen's request was classic insubordination.

[3]Notably, this principle is inapplicable to Title VII cases.

5

Department of Industrial Relations. *Wal-Mart Stores, Inc. v. Hepp,* 882 So.2d. 329

(Ala.2003).

Thus, on the retaliation claim, the Defendant is entitled to judgment as a

matter of law.

By separate order, summary and final judgment will be entered for

Defendant.

Done the 3rd day of February, 2006.

_____

U.W. Clemon
Chief United States District Judge